980 So.2d 180 (2008)
Sandra DOWLES, Plaintiff-Appellee
v.
CONAGRA, INC., Defendant-Appellant.
No. 43,074-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 2008.
*183 Hayes, Harkey, Smith & Cascio, LLP, by John B. Saye, Monroe, for Appellant.
Jones & Jones Attorneys at Law, by Johnnie A. Jones, Sr., Baton Rouge, for Appellee.
Before STEWART, MOORE and LOLLEY, JJ.
MOORE, J.
Sandra Dowles sued the defendant, ConAgra Poultry Company (now Pilgrim's Pride Corporation but hereinafter "ConAgra"), for wrongful discharge, alleging that she was terminated from her job for exercising her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. ConAgra defended the suit on grounds that Dowles was justifiably terminated for submitting an altered medical excuse. After a jury returned a verdict in favor of Dowles awarding her $10,000 in lost wages, ConAgra appealed. Dowles answered the appeal, seeking additional damages and reinstatement to her position. For the reasons that follow, we amend the judgment to increase the award as required by the statute, award attorney fees, and otherwise affirm.

FACTS
Dowles began working as an "at-will" employee at ConAgra on June 20, 1997. As a new hire, she underwent an orientation and received an employee handbook that explained the company policies and procedures, including the company's FMLA. The employee handbook listed the kinds of major violations that would likely result in termination absent unusual circumstances. One of the 15 categories of "major violations" included "falsification of any information (written or oral) of any . . . written excuse of absence of work . . . or medical form." Dowles signed an acknowledgment *184 that she had received, read and/or had explained to her all of these policies in the handbook.
Dowles was terminated on February 8, 2002, on grounds that she submitted an altered medical excuse. She later filed the instant suit seeking damages for wrongful discharge. After several motions for summary judgment were denied, the matter was tried before a jury over three days in November of 2006.
Summary of Trial Evidence
Prior to her termination, Dowles utilized Family Medical Leave on numerous occasions without incident in order to care for her son, Colby Mays, who suffers from asthma.[1] Then, on February 6 or 7, 2002, she submitted a medical excuse to ConAgra Human Resources employee, Caroline Montgomery, from Dr. Wyatt Webb indicating that Colby was sick with the flu, and Dowles needed to be off to care for him.[2]
Ms. Montgomery testified that after Dowles gave her the excuse, she recognized that one of the dates on the excuse had been altered. The original form excused Dowles' absence from 2/1/02 to 2/7/02, but the middle number "7" in the second date had been written over to make an "8" out of the "7," thereby extending the excused absence period by one day to 2/8/02. At trial, Ms. Montgomery identified the yellow original excuse she testified that she received from Dowles, which was placed into evidence as D-7. Ms. Montgomery denied that she altered Dowles' excuse. She brought the matter to the attention of her supervisor, Human Resources supervisor Ms. Jackie Wilson, who instructed her to forward the excuse to the company nurse's station to verify the dates on the excuse. Through the nurse's station, Ms. Wilson confirmed with Dr. Webb's office that no one had altered the dates: the excuse covered the period from 2/1/02 to 2/7/02. Ms. Wilson terminated Dowles on February 8, 2002.
Dowles testified, however, that she did not alter the medical excuse she submitted to Ms. Montgomery, and that the excuse she submitted was not altered. She testified that she asked Ms. Montgomery for a copy when she gave it to her, and Ms. Montgomery sent her down the hall to make a copy for herself. Dowles introduced Plaintiff's Exhibit 1 ("P-1"), a document initially purporting to be the copy of the medical excuse she made at ConAgra on February 6, 2002. On this copy, the date in question, "2/1-2/7," was not altered. ConAgra objected to the admission of P-1 on grounds that the document was not the original copy of the excuse Dowles made at ConAgra, which was evident because P-1 had a fax header across the top of the page indicating that it was a fax that had been sent from ConAgra's counsel's law office on April 30, 2006.
*185 After a sidebar, followed by a discussion of P-1 on the record, the court ruled that P-1 was a fax from defense counsel, not the actual copy made by Dowles, and plaintiff's counsel would have to lay a proper foundation for P-1. Plaintiff's counsel argued that P-1 was identical to the copy of the excuse defense counsel had in its possession, which, plaintiff's counsel alleged, was the copy of the original medical excuse Dowles made at ConAgra on February 6, 2002; after the jury was returned to the courtroom, Dowles identified P-1 as such. Plaintiff's counsel also proffered P-4, over the defendant's "best evidence" objection, which Dowles testified was a second excuse given to her by Dr. Webb for 2/8/02 because Colby was still sick on that day. P-4 was not admitted into evidence because it could not be authenticated.
The matter of a proper foundation for P-1 did not end there, however. Using the fact that the fax header on P-1 was from defense counsel's office, plaintiff's counsel's questions to Dowles were construed by defense counsel to imply that ConAgra or its defense counsel had been in possession all along of this alleged authentic, "unaltered" copy of the excuse that Dowles alleged she submitted. After another discussion on the record but outside the presence of the jury, the court learned that P-1 (absent the fax header) was actually already filed into the record by Dowles' prior attorney in a motion for summary judgment in April of 2004. Plaintiff's counsel initially refused to agree to a stipulation in which the court would instruct the jury that the source of the excuse on P-1 was the plaintiff, not ConAgra, insisting that ConAgra had been in possession of this evidence favoring his client since 2004 and possibly from the inception of the case. Defense counsel argued a mistrial was in order because the damage could not be undone.
In an attempt to placate both sides, the court offered to instruct the jury that although the fax header on P-1 might imply that the defense had been in possession of the copied medical excuse from the beginning of the case, the true source of the medical excuse was actually the plaintiff, who had supplied ConAgra with this copy in response to discovery, and who had filed it into the record in 2004 as part of a motion for summary judgment. Both sides rejected this offer. Defense counsel wanted P-1 removed from the evidence altogether, and plaintiff's counsel would not agree to removal of the fax header on P-1.
Ultimately, the trial court denied the defendant's motion for a mistrial. It determined that it could avoid undue prejudice to either side by instructing the jury as to the source of the medical excuse on P-1.
Ms. Montgomery confirmed that when Dowles presented the written excuse to her, Dowles asked for a copy. Because there was no copy machine in her work area, Dowles took the original out into the hallway where the copy machine was located and returned the original to Ms. Montgomery shortly thereafter. Ms. Montgomery was not in a position to observe Dowles making a copy of the original. After Dowles gave the original back to her, and only at that time, Ms. Montgomery noticed that the excuse had been altered. She did not say anything to Dowles regarding the alteration she observed.
The foregoing evidence constituted the plaintiff's case. Defendant moved for a directed verdict, which the trial court denied.
Defense counsel elicited testimony from Ms. Montgomery that on the same day that Dowles was terminated, a Mr. James Pinton was also terminated for altering a *186 medical excuse from Dr. Webb in the very same way that Dowles' excuse was altered. Pinton was at Dr. Webb's office on February 5 at the same time that Dowles brought Colby to Dr. Webb, although Dowles denied that the two had gone to Dr. Webb's office together. Ms. Montgomery testified that she did not think this was unusual because she had observed that Pinton and Dowles came to work in the same car on many occasions. Moreover, after their firings, each filed a union grievance listing the same home address and each other as witnesses.
Vicki Schlemmer from Dr. Webb's office (the Family Medical Clinic in Mer Rouge) testified that Dowles and Colby came to the clinic on February 5, 2002, and Dr. Webb wrote her an excuse for 2/1/02 to 2/7/02. She testified that Dr. Webb never alters an excuse, so as to avoid any confusion or question regarding an excuse, and that he had instructed all staff to never alter an excuse. Ms. Schlemmer could not determine from Dowles' medical records on what day Dr. Webb issued Dowles a second excuse for 2/8/02; Her records did show, however, Dowles' next office visit, after February 5, was not until February 12.
Ms. Schlemmer also confirmed that ConAgra had asked the clinic whether they had altered Dowles' excuse. She identified on D-14, a note written by Kathy Davis at the clinic. The note reads:
Dr. Webb states that he did not alter this excuse but that this child was sick during this time and he gave the mother another excuse and instructed her to not alter excuses but to come to [the] office next time for another excuse.
Kathy Davis
Ms. Jackie Wilson, ConAgra's HR supervisor, testified that she decided to terminate Dowles and Pinton solely for submitting the altered excuses as major violations of company policy; this was the customary action in all such cases. Both Dowles and Pinton filed grievances to the union on February 13, 2002, alleging unjust termination. Ms. Wilson denied these on grounds that company policy required termination for submitting an altered medical record, irrespective of who actually altered it. The union did not appeal or seek further redress. Ms. Wilson also testified that the alteration of the medical record was the sole reason for termination and not because Dowles sought leave under FMLA. In fact, she testified that Dowles did not even seek leave under FMLA for February 8, 2002.
Ms. Wilson explained that both Dowles and Pinton were in trouble because of their absences unrelated to FMLA, and Dowles would have been terminated if she had one more unexcused absence. ConAgra has a "no fault" attendance policy in which an employee is allowed 9.5 points per 12-month period. No excuse is required, medical or otherwise, for an absence. The employee receives one point for each absence, and two points if he fails to call in and report that he will be absent. An employee who exceeds 9.5 points is terminated according to company policy. When asked by plaintiff's counsel why she thought Dowles submitted the altered excuse, Ms. Wilson opined that she did so in order to avoid termination for an unexcused absence on February 8. Based on the record, it appeared Dowles had 8 points.[3] However, her termination, Wilson said, was not related to her taking FMLA leave which was approved from 2/1/02 thru *187 2/7/02, nor for exceeding the allowed 9.5 points, but rather for submitting a "falsified" medical excuse, which was a violation of company policy irrespective of FMLA.
ConAgra also introduced D-21, a medical excuse from Dr. Webb that appears to be dated 2/19/02, and states that Dowles was taking care of her son on 2/8/02 due to illness. Ms. Wilson testified that Dowles presented this to her on 2/19/02. She said she terminated her for submitting the altered medical excuse, and the subsequent excuse retroactively excusing her for February 8 made no difference.
After a three-day trial, the jury rendered a verdict in favor of the plaintiff. Judgment was rendered on December 8, 2006. ConAgra filed the instant appeal alleging seven assignments of error at trial. Dowles filed an answer praying for additional damages and reinstatement to her position at ConAgra.

DISCUSSION
Under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq, an "eligible employee" is entitled to take 12 workweeks of leave "for the care of [a] son or daughter" who has a "serious health condition." 29 U.S.C. § 2612. An employee is an "eligible employee" when he or she has been employed for at least 12 months by the employer and has worked for at least 1,250 hours. 29 U.S.C. § 2611(2)(A). A "serious health condition" includes an illness or physical condition that involves "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The employer may require an employee to support a request for FMLA leave with a certification from a health care provider that includes information about when the serious health condition began, the probable duration of the condition, and the medical information known to the health care provider about the situation. 29 U.S.C. § 2613(a), (b). An eligible employee who takes FMLA leave is entitled, upon returning from leave, to be restored to her original position or to an equivalent position. 29 U.S.C. § 2614.
It is a violation of the Act to terminate an employee for exercising his or her right to leave under FMLA. 29 U.S.C. § 2615; Viereck v. City of Gloucester City, 961 F.Supp. 703 (D.N.J.1997). The FMLA prohibits employers from denying employees FMLA benefits to which they are entitled and from retaliating against employees for using FMLA leave. However, nothing in the FMLA prohibits an employer from investigating allegations of dishonesty or from terminating an employee who violates company policies governing dishonesty. The FMLA does not shield an employee from termination simply because the alleged misconduct concerns use of FMLA leave. Hoffman v. Professional Med Team, 394 F.3d 414 (6 Cir.2005).
An employer may require that the employee's request for leave "be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). An employee's medical certification "shall be sufficient" if it contains the following information: "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [and] (4) . . . a statement that the employee is unable to perform the functions of the position of the employee." 29 U.S.C. § 2613(b). The Act also provides a certification procedure that an employer may utilize if it questions the validity of the medical certification submitted by the employee. 29 U.S.C. § 2613(c).
Standard of Review
On review, an appellate court may not set aside the findings of fact by *188 the trial court unless those findings are clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, an appellate court must not base its determination on whether it considers the trier of fact's conclusion to be right or wrong, but on whether the factfinder's conclusion was reasonable. Stobart v. State, 617 So.2d 880 (La.1993). However, with regard to decisions of law, a trial court's decision is subject to de novo review. Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90.
Validity of FMLA Claim
By its first assignment of error, ConAgra argues that the jury was clearly wrong in finding that Dowles met her burden of proof to establish that she was terminated for availing herself of a protected FMLA right. Specifically, ConAgra contends that Dowles, with knowledge of the company's rules regarding family medical leave, included false information in the medical excuse she submitted, and therefore, she was not exercising a right protected by FMLA.
There are "two distinct theories of recovery under the FMLA." Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 244 (6 Cir.2004). The first theory, so-called "interference" or "entitlement" claims, arise under 29 U.S.C. § 2615(a)(1), which reads, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Violation of any of the implementing regulations may also constitute unlawful interference. 29 C.F.R. § 825.220(b). The second theory encompasses "retaliation" or "discrimination" claims under 29 U.S.C. § 2615(a)(2), which prohibits employers from discharging or discriminating against employees who oppose unlawful FMLA practices. See Hoge, 384 F.3d at 244.
We conclude that Dowles' claim falls under the second theory, namely, that ConAgra discharged her in retaliation for exercising her FMLA leave rights.
Absent direct evidence that an employee was discharged for taking FMLA-qualified leave, most courts analyze FMLA "retaliation" claims under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See, Gibson v. City of Louisville, 336 F.3d 511, 513 (6 Cir.2003). Under this analysis, a plaintiff can establish a prima facie case of retaliation by showing that (1) she engaged in activity protected under FMLA, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two. Vanmeveren v. Whirlpool Corp., 65 Fed.Appx. 698, 2003 WL 21235475 (10 Cir.2003). The defendant can rebut the plaintiff's prima facie case of retaliation by offering a legitimate, non-retaliatory reason for the adverse employment action; if the employer does that, the plaintiff must prove, by a preponderance of the evidence, that the proffered reason is pretextual. Id.
Pretext can be established by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." Kitts v. General Telephone North, Inc., 2005 WL 2277438 (S.D.Ohio 2005) (Not Published in F.Supp.); Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6 Cir.1994).
ConAgra contends that Dowles did not meet her burden of showing that she was exercising rights protected by the FMLA because employees who submit false information are not protected under the Act. ConAgra's argument begs the question[4] *189 because it assumes as evidence for their argument the very conclusion they are attempting to prove, namely, that Dowles submitted a falsified medical excuse. ConAgra is correct in the sense that nothing in the FMLA prohibits an employer from terminating an employee who violates company policies governing dishonesty, nor does the FMLA shield an employee from termination for submitting a falsified document regarding FMLA leave. Hoffman, supra. So the question is whether the jury found that Dowles submitted a falsified medical excuse in this case.
At trial, Dowles attempted to show that she did not submit a falsified medical excuse to Ms. Montgomery on February 6, 2002. Her evidence to prove this assertion was her own testimony and P-1, which she stated was a fax copy of the unaltered original copy of the excuse that she submitted to Ms. Montgomery. In other words, she testified and submitted P-1 into evidence as proof that the excuse she submitted was dated "2/1-2/7," and any alteration of the "7" must have occurred after she submitted the excuse. Dowles also attempted to show that her absence from work on February 8, 2002, was covered under FMLA, but failed to get a proffered written excuse (P-4) into evidence because there was no witness to authenticate it. However, D-14 contained a note from the clinic that Dr. Webb said the child was sick 2/8/02 and that he gave her another excuse after instructing her not to alter excuses, and D-21 consisted of another medical excuse from Dr. Webb for 2/8/02, written on 2/19/02 and submitted to Ms. Wilson by Dowles on 2/19/02, after she had been terminated.
ConAgra sought to prove that Dowles submitted an altered excuse. Ms. Montgomery identified an original yellow excuse slip, D-7, that she testified she received from Dowles after Dowles went to make a copy of it. She stated that she immediately noticed that it had been altered, but she did not say anything to Dowles about it. Instead, she contacted Ms. Wilson about the alteration. Ms. Wilson told her to forward the excuse to the company nurse's station for them to confirm whether the excuse had been altered. The nurse's station faxed a copy of the excuse to Dr. Webb's office with a note at the top of the fax requesting: "Please check what dates of return for these  Looks like they are changed." A note written on the page by a ConAgra employee states: "Has been altered per MD. office." Later, Dr. Webb's office sent the copy of the fax back to ConAgra with the note from Kathy Davis quoted above. We observe that the note written by Ms. Davis indicates that Dr. Webb instructed Dowles not to alter medical excuses. Additionally, ConAgra adduced testimony from Ms. Wilson to show that Dowles had a motivation to alter the excuse to avoid termination for excessive absences not under FMLA, while there was no reason for Ms. Montgomery or anyone else at ConAgra to alter the excuse.
The first of three questions on the jury verdict form asked the following:
(1) Do you find the plaintiff has established more likely than not that she was eligible for Family Medical Leave and was terminated for receiving Family Medical Leave?
The question is actually two questions: First, was Dowles eligible for Family Medical *190 Leave, and second, was she terminated for receiving Family Medical Leave? The jury responded "yes" to the question as written, which must be construed to mean "yes" to both questions.
We are constrained under the manifest error standard to affirm these two findings of fact, even though we might have ruled differently given the evidence in this case. In Loomis v. Honda of America, Inc., 2003 WL 133264, 2003 U.S. District Lexis 26797 (S.D.Ohio 2003), cited by ConAgra, the court held that an employee who alleged she was wrongfully terminated for exercising her rights under FMLA could not establish that she was exercising her rights under FMLA where she misrepresented facts and altered a health care form checking that she had a medical condition that required continued care. The employer terminated her when it discovered she falsified the facts and documents stating that she needed medical treatment, after learning that during the relevant time period, she took a trip to Las Vegas, got married, and subsequently hosted a wedding reception.
Unlike the facts in Loomis, in this case, the child's treating physician reported through Kathy Davis in D-14 that the child was actually sick on the day in question. In other words, there is evidence in the record that Dowles was engaged in a protected activity on 2/8/02 although the excuse she testified she gave to Ms. Montgomery only covered until 2/7/02. Dowles subsequently submitted an excuse from Dr. Webb covering 2/8/02 under FMLA.
ConAgra further contends that it is not a question of whether Dowles could have obtained a valid excuse, nor whether Dowles herself altered the excuse she submitted. They contend the fact that she submitted an altered excuse is grounds enough for termination.
ConAgra's point is undermined, however, by the evidence that Dowles did not alter the excuse. In Vanmeveren v. Whirlpool Corp., a jury returned a verdict in the plaintiff's favor on her complaint that her employer terminated her in retaliation for exercising her rights under FMLA. Following the verdict, the employer, Whirlpool, moved for judgment as a matter of law under Fed.R.Civ.P. 50(b), and the trial court granted the motion on the grounds that Whirlpool presented undisputed evidence showing that it had a lawful justification for firing the plaintiff. Plaintiff appealed.
The plaintiff in Vanmeveren had missed work on February 9 pursuant to a previously submitted leave request and was five hours late to work on February 15. Under an unexcused absence policy similar to ConAgra's, Ms. Vanmeveren was over the number of unexcused absences allowed and could be terminated (absent justification as an FMLA-excused absence). She sought to have the February 9 absence qualified as an FMLA day and the February 15 absence as only a partial absence. Whirlpool investigated the February 9 excuse and discovered that Ms. Vanmeveren had lied about the time of her doctor's appointment and terminated her on those grounds.
The court of appeal affirmed the trial court's Rule 50(b) judgment. At trial, Whirlpool had given two legitimate, non-retaliatory reasons for termination of the plaintiff, (1) falsification of the appointment time on February 9, and (2) a seventh unexcused absence on February 15. Although Whirlpool said that it chose to terminate her for falsification because of the importance of honesty in Whirlpool's work and operations, it also established that it could have terminated her for the unexcused absence on February 15. The trial court reasoned, and the court of appeals *191 agreed, that the plaintiff presented no evidence that her seventh absence was not unexcused, and even stipulated that it was unexcused. Thus, the employer had a legitimate, non-retaliatory reason to terminate her.
Unlike Vanmeveren, supra, in this instance, Dowles did offer evidence that her excuse, P-1, was not altered when she submitted it, that Colby was sick on February 8, and that Dr. Webb authorized this as a legitimate FMLA absence. Thus, in spite of ConAgra's contrary evidence, the jury decided to give greater weight to Dowles' testimony and P-1, as well as the other evidence, than to ConAgra's evidence. After a review of the entire record, we cannot say that the jury was clearly wrong or that there is no reasonable basis in the record for the jury's findings.
By its second assignment of error, ConAgra contends that the jury was clearly wrong and committed legal error to find that Dowles was not terminated for a legitimate, non-discriminatory reason. ConAgra contends that it cannot be held liable if it had an honest belief that Dowles falsified the excuse and terminated her for that reason, citing Medley v. Polk Co., 260 F.3d 1202 (10 Cir.2001); and Kariotis v. Navistar Intern. Trans. Corp., 131 F.3d 672 (7 Cir.1997). Medley held that the trial court erred in failing to give an honest belief defense jury charge since there was evidence in the record that would support that conclusion under FMLA, 29 U.S.C. § 2615. Kariotis held that termination based on the employer's honest belief that the employee was acting fraudulently regarding her time off for her disability following knee surgery was enough to defeat any employee claims filed under the ADA, AREA, EISA, COBRA, and FMLA.
The second jury interrogatory in this case asked: "Do you find that the defendants have established more likely than not that the plaintiff was terminated for a legitimate, non-discriminatory reason?" The jury answered "no," which we construe to mean that the jury found that ConAgra did not terminate Dowles for a legitimate, non-retaliatory reason.
Because we have concluded that the jury must have found that Dowles did not submit an altered medical excuse, and the jury must have found that ConAgra terminated her for using FMLA leave, and under the manifest error standard we have declined to reverse those findings, we are also constrained to conclude that the jury found that ConAgra used the "altered excuse" grounds for termination as a pretext to terminate her because of her extensive, albeit legitimate, use of FMLA leave. We observe that when ConAgra's HR department contacted Dr. Webb's office regarding the altered medical excuse slip, Dr. Webb confirmed through his staff employee, Kathy Davis, that the child was actually sick during the excused period and that he had written another excuse covering the day. This at least indicated that ConAgra was on notice that Dowles did not falsify her reason for being absent to take care of her son on 02/8/02.
ConAgra insists, however, that termination for submitting the altered date on the excuse, irrespective of whether Colby was actually sick and needed Dowles to care for him and would have otherwise qualified for FMLA leave on this day, constitutes enough to articulate a legitimate, non-retaliatory reason for termination. Assuming that ConAgra has met its burden of articulating a legitimate, non-retaliatory reason for terminating Dowles, the burden shifts back to her to show, by a preponderance of the evidence, that the proffered reason for her termination was pretextual. Pretext can be established by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered *192 reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." Kitts v. General Telephone North, Inc., supra.
We distinguish Baltuskonis v. U.S. Airways, Inc., 60 F.Supp 2d 445 (E.D.Penn. 1999), cited by ConAgra, on its facts. Although it is similar to the instant case in that the plaintiff in that case submitted a doctor's note with an altered return to work date, the alterations were much greater, and the employer discovered that the original doctor's note was written for Baltuskonis' daughter, not Baltuskonis, and there was no return date written on the original. In other words, Baltuskonis had not obtained any medical treatment and the excuse was never written for him as an excused absence from work.
After review of this record, we conclude that a jury could have reasoned that, given the fairly large amount of FMLA time off that Dowles had taken, and for which she apparently received pay, ConAgra was anxious to find a reason to terminate her, but because Dr. Webb confirmed that Colby was actually sick on the day in question, Dowles conduct was simply not enough to justify a discharge when the employer was also on notice that the child was actually sick on the day in question.
Accordingly, these assignments of error lack merit.
Admissibility
Assignments three and four concern Plaintiff's Exhibit P-1. ConAgra submits that Dowles offered P-1 as a copy of the original medical excuse, which Dowles testified she had made. However, the document admitted into evidence as a copy of the original was, in fact, a copy of a fax (bearing defense counsel's fax header) sent during discovery. ConAgra alleges that this evidence was admitted on an improper foundation. Moreover, plaintiff's counsel thereafter implied that ConAgra possessed the allegedly "unaltered" document from the date Dowles presented it until it faxed her a copy, when, in fact, ConAgra obtained the copy from Dowles' prior counsel, Ferguson, pursuant to a discovery request. The court admitted P-1.
ConAgra contends that it was greatly prejudiced by P-1 because the document, along with some of the questions of counsel, gave the impression that ConAgra had an original unaltered excuse from the time of termination and withheld it from the plaintiff, and counsel's questioning about it further implied to the jury that ConAgra altered the medical excuse.
The trial court ruled that the document was not the actual copy made by Dowles on February 6 at ConAgra, but admitted it for what it was, a fax of a copy, presumably leaving it to the jury to determine what weight to afford the document. In an effort to cure any prejudicial effect, the court instructed the jury that P-1 was a copy of a fax and was not created by ConAgra. However, ConAgra contends that Dowles' counsel, Mr. Jones, continued use of P-1 in a prejudicial manner during the questioning of Dowles and Carolyn Montgomery warranted a mistrial. The court denied ConAgra's motion for a mistrial.
Based on our review, we conclude that the trial court did not abuse its discretion in admitting P-1 into because it instructed the jury as to its source. We also conclude that it did not err when it denied ConAgra's motion for a mistrial.
Motion for Directed Verdict
At the close of plaintiff's case, ConAgra moved for a directed verdict, alleging that Dowles had not met her burden of proof, namely, that she had not shown she was entitled to the rights under FMLA. By its fifth assignment of error, ConAgra contends that the trial court committed legal *193 error when it denied its motion for a directed verdict.
The standard of review of a trial judge's granting of a directed verdict is whether, viewing the evidence submitted, reasonable men could not reach a contrary verdict. In addition, the appellate court must evaluate the propriety of a directed verdict in light of the substantive law related to the claims. Wiley v. Sanders, 37,077 (La.App. 2 Cir. 6/13/03), 850 So.2d 771, writ denied, XXXX-XXXX (La.10/31/03), 857 So.2d 487; Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290.
After reviewing this record in a light most favorable to plaintiff, we cannot conclude that the facts and inferences so overwhelmingly favored a verdict for defendant that reasonable jurors could not have arrived at a contrary conclusion. Accordingly, the trial court did not err in denying the motion for a directed verdict.
Post-trial Motions
By its sixth and seventh assignments, ConAgra submits that the trial court erred in not granting its motions for JNOV and new trial. It contends that Dowles had the burden of proving that her conduct was protected under the FMLA and that she was discharged for exercising her rights under the FMLA. For the reasons discussed in the previous assignments, it contends that Dowles failed to do so. Therefore, it contends the trial court committed legal error when it failed to grant the JNOV or motion for a new trial.
The motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both. La. C.C.P. art. 1811(F). The standard to be used in determining whether a JNOV has been properly granted has been set forth in our jurisprudence as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. (Citations omitted).
Davis v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/28/00), 774 So.2d 84.
The standard of review for a JNOV on appeal is a two-part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the same criteria as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Davis, supra.
Using the criteria described above, we conclude that by resolving all inferences and factual questions in favor of the plaintiff, the trial court did not commit manifest error in denying the JNOV.
*194 The motion for a new trial requires a less stringent test than for a JNOV. A new trial may be granted in any case if there is good ground therefor. La. C.C.P. art. 1974. Whether to grant a new trial requires a discretionary balancing of many factors. Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La. App. 2 Cir.1991). Unlike the standard applicable to a motion for JNOV, the trial judge may evaluate evidence without favoring any party and draw his own inferences and conclusions. Perhaps the significant authority is the ability to assess the credibility of witnesses when determining whether to grant or deny the motion for new trial. Wyatt v. Red Stick Services, Inc., 97-1345 (La.App. 3 Cir. 4/1/98), 711 So.2d 745 citing Morehead v. Ford Motor. Co., 29,299 (La.App. 2 Cir. 5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265. The trial court's discretion in ruling on a motion for new trial is great, and its decision will not be disturbed on appeal absent an abuse of that discretion. Id. Furthermore, "when the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered." Lamb v. Lamb, 430 So.2d 51 (La.1983).
The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Gibson v. Bossier City General Hospital, supra. The fact that a determination on a motion for new trial involves judicial discretion does not imply that the trial court can freely interfere with any verdict with which it disagrees. Wyatt v. Red Stick Services, Inc., supra.
After thorough review, we cannot say that the trial court committed manifest error or abused its discretion in denying ConAgra's motion for new trial.

PLAINTIFF'S ANSWER TO CONAGRA'S APPEAL
Dowles answered the appeal requesting additional damages, including additional lost wages, attorney fees, reinstatement and other relief under FMLA to make her whole.
Damages under FMLA
An employer who violates the Act shall be liable "for damages equal to the amount of (1) the wages and employment benefits, past and future, lost to the employee by reason of the violation, (2) interest on the lost wages and benefits, (3) `liquidated' or double damages equal to the lost wages, benefits and interest thereon, unless the employer can prove that it acted in good faith and had a reasonable ground for believing that the act or omission was not a violation of the FMLA, and (4) such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1). Additionally, the Act provides for a mandatory award of attorney fees, expert witness fees and other costs. 29 U.S.C. § 2617(a)(3).
Neither damages for mental distress nor punitive damages are available *195 under the Act. McAnnally v. Wyn South Molded Products, Inc., 912 F.Supp. 512, 513 (N.D.Ala.1996). Moreover, a plaintiff has the duty of mitigating his damages to the extent reasonably possible and is not entitled to recover damages that could have been avoided through such mitigation. Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3 Cir.1995) (Title VII); Sellers v. Delgado College, 902 F.2d 1189, 1191 (5 Cir.1990) (Title VII); Smith v. Great American Restaurants, Inc., 969 F.2d 430, 438 (7 Cir.1991); (ADEA); Murphy v. City of Flagler Beach, 846 F.2d 1306, 1309 (11 Cir.1988) (Section 1983). Any award of backpay or front pay must be discounted by any sums that reasonably could have been earned, plus any sums actually earned. Troy v. Bay State Computer Group, 141 F.3d 378, 382 (1 Cir.1998); McDonnell v. Miller Oil Co., 110 F.3d 60 (table), 1997 WL 153820 (4 Cir.1997).
In the context of employment discrimination, the burden rests on the defendant to prove that the plaintiff has failed to reasonably mitigate her damages, and that there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. Jacobs v. NOPSI, 432 So.2d 843 (La.1983); Hanna v. American Motors Corp., 724 F.2d 1300 (7 Cir.1984); Rasimas v. Mich. Dept. of Mental Health, 714 F.2d 614 (6 Cir.1983); Jackson v. Shell Oil Co., 702 F.2d 197 (9 Cir.1983); Wheeler v. Snyder Buick, Inc., 794 F.2d 1228 (7 Cir.1986).
We have reviewed the record and jury instructions regarding damages in this case. The jury was adequately instructed regarding Dowles' duty to mitigate her damages. The testimony regarding damages is not especially helpful. Dowles did testify that she worked for Manpower in Monroe, Inc. and at Louisiana Cotton Industry in Mer Rouge. Her wages were $6.15 and $6.50 respectively, compared to $9.01 at ConAgra. She is currently a student at a technical school.
We therefore conclude that the jury award of $10,000 is appropriate in this case. However, under 29 U.S.C. § 2617(a)(1)(A)(iii), the court should have awarded "liquidated" or double damages equal to the lost wages, benefits and interest thereon, unless the employer can prove that it acted in good faith and had a reasonable ground for believing that the act or omission was not a violation of the FMLA. Because the jury found that Dowles did not submit an altered excuse and the stated reason for her termination was pretextual, and although we might reach a different conclusion, we cannot conclude that ConAgra acted in good faith. Accordingly, Dowles is entitled to an additional $10,000 in liquidated damages with interest from the date of judicial demand.
Under 29 U.S.C. § 2617(a)(3), the successful plaintiff is entitled to a reasonable attorney fee. Accordingly, we render judgment awarding attorney fees of $5,000.
We decline to require ConAgra to reinstate Dowles or award any equitable relief in this case.

CONCLUSION
For the foregoing reasons, we amend the total damage award to $20,000 and award $5000 in attorney fees, and as amended, the judgment is affirmed. Costs of appeal are to be paid by ConAgra.
AMENDED, AS AMENDED, AFFIRMED.
NOTES
[1] Defendant's exhibit D-6 indicates that Dowles was off 81 of 260 work days in 2001, including what appears to be a 1½-month leave of absence. In January of 2002, she was off for 5 of the 20 work days for FMLA and the first 5 work days of February.
[2] Ms. Montgomery testified that Dowles submitted the altered excuse to her on February 7, 2002, relying on a handwritten note she made on an Employee Status Review (D-8) listing the dates of Dowles' absence from work. The note written above the absence dates reads: "came in brought dr stmt," was initialed "cm" and was written above 2/6 but appears to have an arrow pointing to 2/7. However, the return fax from Dr. Webb's office confirming that the medical excuse was not altered by the clinic and which was sent in response to a fax copy of the excuse sent from the nurse's station at ConAgra was dated February 6. Hence, it appears that the likely date Dowles turned in the excuse to Ms. Montgomery was February 6, 2002.
[3] Presumably she calculated that Dowles would be penalized two points for the absence of February 8, giving her 10 points and requiring termination.
[4] We are aware of the unfortunate current popular usage of "begs the question" as an expression synonymous with "raises the question." Traditionally, however, the phrase "begging the question" refers to the logical fallacy of writers who assume as evidence for their argument the very conclusion they are attempting to prove. See Bryan A. Garner, A Dictionary of Modern Legal Usage, 2d ed., p. 101.