Judgment rendered May 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,085-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JULIE ASHLEY THOMAS                         Plaintiff-Appellant

versus

STEVE ERIN CRAWFORD, D.C.                   Defendant-Appellee

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Franklin, Louisiana
Trial Court No. 45,765B

Honorable Will R. Barham, Judge

* * * * *

KENNETH ST. PÉ, APLC                        Counsel for Appellants,
By: Kenneth St. Pé                          Patrick Thomas,
                                            Julie Ashley Thomas,
                                            Ashley O'Mera Thomas,
                                            Raylee Walker Thomas,
                                            and Rylan Coy Thomas


COWAN LAW FIRM, LLP                         Counsel for Appellee
By: Thomas Clifton Cowan
    Leah T. Therio


* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

**THOMPSON, J.**

Julie Thomas visited her chiropractor for treatment of a "crick" in her neck, which was treated with a C-1 Toggle maneuver, a chiropractic maneuver she had never before received. Immediately after the maneuver, she suffered the onset of symptoms of a stroke, which included vomiting, loss of vision, dizziness, and weakness in part of her body. The seriousness of her symptoms required that she be transported from the chiropractic office by ambulance to the emergency room at the closest hospital, and ultimately by helicopter to University Health in Shreveport, where she was diagnosed with a vertebral artery dissection and stroke. She filed a medical malpractice claim, and the medical review panel found her chiropractor did not breach the standard of care. The case proceeded to trial in district court, and following the presentation of her evidence, the trial judge granted a motion for directed verdict in favor of the chiropractor, which she now appeals. Finding that reasonable jurors could have arrived at a contrary conclusion, we reverse the trial court's grant of a directed verdict, and remand this matter for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Julie Thomas ("Thomas") occasionally experienced back or neck pain over the past several years and would see a Winnsboro, Louisiana chiropractor, Steve Erin Crawford, D.C. ("Dr. Crawford"), as needed on those occasions. Thomas was experiencing pain associated with what she described as a "crick" in her neck and consulted Dr. Crawford on May 4 and May 5, 2016, for treatment. Those treatments provided limited relief, and Thomas again returned to Dr. Crawford's office on May 11, 2016, for

treatment.  At the time of this visit, Thomas was a 36-year-old mother of four, who was in good health and worked as an elementary school teacher.

During this visit, Dr. Crawford explained that he was going to try something different from the adjustments he had performed on her in the past.  Dr. Crawford performed a chiropractic technique called the C-1 Toggle maneuver.  The C-1 Toggle maneuver involved Thomas lying on her side on a special table equipped with a headrest that could be set to an appropriate height.  As part of the maneuver, the headrest would then drop down, in conjunction with some force applied very quickly to her neck by Dr. Crawford, resulting in the adjustment of her C-1 vertebra.

Immediately following Dr. Crawford's performance of the C-1 Toggle maneuver, Thomas began experiencing serious symptoms, including vomiting, dizziness, vision loss, and the inability to control her body, particularly the right side.  As a result of Thomas' sudden onset of symptoms, Dr. Crawford contacted Thomas' mother, who immediately drove to his office.  The record indicates that after Thomas' mother arrived and observed her daughter's condition, she insisted that Thomas required immediate medical attention.  Dr. Crawford's assistant contacted EMS. Thomas was transported from Dr. Crawford's office via ambulance to Richardson Medical Center in Rayville, Louisiana.  From there, Thomas was airlifted to University Health in Shreveport, where it was determined that she had suffered a stroke caused by a vertebral artery dissection at the C-1/C-2 vertebrae level of her neck.

There is a factual dispute between the parties as to the way the C-1 Toggle maneuver was performed.  Thomas claims that Dr. Crawford jerked

her chin toward the ceiling during the maneuver, which caused the immediate onset of her symptoms. Dr. Crawford claims that he did not jerk her chin toward the ceiling, and any contact with her chin would have been confined to positioning her head prior to performing the maneuver.

On February 7, 2018, a medical review panel convened and issued its opinion, finding that Dr. Crawford did not breach the standard of care. On March 15, 2018, Thomas filed a medical malpractice action in the district court, seeking to recover from him for the resulting medical expenses and damages that resulted from his chiropractic treatment.

On September 3, 2019, Thomas filed a motion to strike the medical review panel opinion and panel testimony at trial. Thomas' argument in favor of striking the panel opinion was that panelist Jason Abshire, D.C. ("Dr. Abshire") testified during his January 15, 2019 deposition that he found no breach of the standard of care by concluding that Dr. Crawford's version of events was correct. However, when questioned further regarding the panel's final conclusion that Dr. Crawford did not breach the standard of care, Dr. Abshire admitted that if Thomas' description of the maneuver was to be believed, then Dr. Crawford would have in fact breached the standard of care. Therefore, Thomas contended that the panel made a credibility determination by choosing to believe Dr. Crawford's version of events. Thomas argued that the contradictory accounts of the incident presented a credibility issue for the jury and asserted that the resolution of the credibility issue was not appropriate for the medical review panel. As such, the panel opinion should be struck.

3

On October 21, 2019, a hearing was held on Thomas' motion to strike the panel opinion and testimony at trial. Ultimately, the parties agreed to strike the medical review panel opinion, and that it would not be admitted into evidence at trial. However, the parties agreed that the medical review panelists would be allowed to testify at trial if they were subpoenaed and called as witnesses. A stipulation outlining this agreement was entered into the record.

On June 20, 2022, the jury trial began. Thomas testified at trial regarding her experience on May 11, 2016, at Dr. Crawford's office. She explained that she lay on her left side on the table with a headrest and that Dr. Crawford stood behind her and placed one hand on her head and one hand on her chin. She described the force applied by Dr. Crawford and the movement as "a quick jerk" and that her "chin went toward the ceiling." Immediately after the maneuver, Thomas testified that her right arm flopped, she became so dizzy that she could not see anything, she also immediately began vomiting, and that the room was spinning. Thomas asked Dr. Crawford if she was okay; he responded that she was okay, stating that "this happens sometimes," and you "just need to go home and sleep it off." Thomas testified that Dr. Crawford used a light to check her eyes, and specifically told her, "you're not having a stroke." Thomas described her body "flopping over," and she required a chair to be placed against a wall so she could sit down, propped against the wall, so she would not fall over.

Thomas testified that she believed Dr. Crawford's assistant called EMS after her mother arrived at his office and insisted she needed medical attention. When EMS arrived at his office, Thomas was placed on a stretcher

4

because she could not walk. Thomas testified that she has vague memories of her ambulance ride to Rayville, followed by her helicopter ride to Shreveport. The record reflects that she spent approximately four days in the ICU at University Health, and then was moved to a different floor in the hospital to undergo physical therapy and occupational therapy. Thomas testified that initially in the hospital, she could not walk and required a walker and a belt to assist her because she could not lift her right leg. After seven days at University Health, she was released to go home. She continued to use a walker and receive assistance from her husband. She received home health care and had follow-up visits with Dr. Bharat Guthikonda, her treating neurosurgeon, for several weeks. Thomas testified that her life drastically changed following the stroke due to the loss of her independence. Thomas also testified regarding the emotional toll of the stroke on herself and her family, as well as the physical and cognitive limitations she still experiences, which she attributes to the stroke.

Dr. Crawford also testified at trial. During his testimony, he admitted that vertebral artery dissection is one possible result of chiropractic care. When describing the C-1 Toggle maneuver, Dr. Crawford testified that the chiropractor applies a quick thrust to the patient's neck to affect the adjustment. He testified it "can be a bit of a shock the very first time it's done." He confirmed that use of excessive force in chiropractic manipulation is a breach of the standard of care, and that lifting the chin is not proper chiropractic technique and is a breach of the standard of care. However, Dr. Crawford denied jerking Thomas' chin toward the ceiling, and

5

testified that the only contact he would have made with her chin would be to position her prior to the maneuver.

Medical review panelist Dr. Jason Abshire's January 15, 2019 deposition was read into the record at trial. As noted above, Dr. Abshire testified that he disagreed with Thomas' account of how Dr. Crawford performed the C-1 Toggle maneuver. Specifically, Dr. Abshire did not believe that Dr. Crawford had jerked her chin toward the ceiling. Dr. Abshire testified that he does not perform the C-1 Toggle maneuver on his patients, due to personal preference. Dr. Abshire testified that if Thomas' version of the incident was true – that Dr. Crawford took her chin and jerked it toward the ceiling – that would constitute a breach of the standard of care.

Dr. Bharat Guthikonda ("Dr. Guthikonda"), a board-certified neurosurgeon at University Health and professor of neurosurgery at the LSU School of Medicine in Shreveport, Louisiana was Thomas' treating physician at University Health following her stroke. His July 9, 2019 videotaped deposition was presented to the jury at trial, in lieu of his live testimony. He acknowledged that Thomas' symptoms began immediately following her chiropractic treatment with Dr. Crawford: "[…] when she went to the chiropractor I don't think she had these symptoms. And then when she had the chiropractic treatment, I think that's what started these symptoms."

Dr. Guthikonda testified regarding Thomas' diagnosis of vertebral artery dissection: "[W]hen we are taught in neurosurgery residency this is kind of, this exact scenario is kind of a classic example of how someone

6

might develop a vertebral artery dissection specifically, is through chiropractic manipulation." Additionally, Dr. Guthikonda provided:

> I think this is an inherent risk to chiropractic manipulation that I think, you know, any chiropractor would agree that this would be a possible risk with their treatment, and I think it's a rare occurrence in terms of what we see for this to actually happen. But I think it's kind of a known risk for that type of treatment.

Dr. Guthikonda further testified: "I'm not a chiropractor, so their exact manipulations and things like that, I'm not familiar with. But I think that the concept of any sort of neck trauma or neck manipulation could cause a vertebral artery dissection." Dr. Guthikonda testified that a vertebral artery dissection is more typically caused by trauma, rather than some underlying blood vessel issue. In response to a direct question on whether a quick jerk to the ceiling could cause Thomas' vertebral artery dissection, Dr. Guthikonda stated:

> I mean, I just am not a chiropractor so it's kind of hard for me. I think it could be. I also think it's probably a maneuver you could do, you know, without that happening, you know 999 out of 1,000 times and not have it happen. So I think, again, mild trauma, big trauma, I think any of those things could probably cause some arterial injury in you know, an unfortunate circumstance.

At the conclusion of the presentation of Thomas' case and her witnesses, Dr. Crawford moved for a directed verdict. During the arguments related to the motion for directed verdict, counsel for Dr. Crawford argued that the testimony presented during Thomas' case that was related to causation did not answer the question of whether "there's medical certainty that the actions of Dr. Crawford caused these injuries." Counsel for Dr. Crawford further argued that Dr. Guthikonda never stated that the chiropractic treatment caused Thomas' injuries, more probably than not.

7

Prior to issuing his oral ruling on the motion for directed verdict, the trial judge appeared to be fixated on Dr. Guthikonda's testimony that in "999 out of 1000 cases," no injury resulted from a chiropractic manipulation. The trial judge stated: "[…] the 999 out of a thousand, that's – please tell me how I in good conscious [sic] send that to a jury and – and be fair to this man as well." When Thomas' counsel implored the trial judge to send the case to the jury, the trial judge concluded: "I don't feel that that would serve the interest of justice." The trial judge issued his oral ruling, granting the directed verdict in favor of Dr. Crawford. This appeal followed.

## DISCUSSION

Thomas asserts two assignments of error:

Assignment of Error Number 1: The trial court erred in granting Defendant's directed verdict because the testimony of Thomas' witnesses, including her treating neurosurgeon, Dr. Guthikonda, established the causal link between Dr. Crawford's chiropractic manipulation and her vertebral artery dissection, and the trial court improperly ignored uncontradicted fact and expert testimony, and/or alternatively made factual determinations belonging to the jury.

Assignment of Error Number 2: The trial court erred in reading the medical review panel opinion to the jury when the parties had stipulated and the court had ordered that the opinion would not be admissible.

In her first assignment of error, Thomas argues the trial court erred in granting Dr. Crawford's directed verdict because the testimony of her witnesses, including her treating neurosurgeon, established a causal link between the chiropractic manipulation and her vertebral artery dissection. Thomas argues that the trial court improperly ignored witness testimony, and made credibility determinations that belonged to the jury. Thomas asserts that the issue presented on the trial court's grant of the motion for directed verdict is not whether she has proven her case against Dr. Crawford by a

8

preponderance of the evidence, but whether, upon reviewing the evidence submitted, the reviewing court concludes that reasonable people could not have reached a verdict in favor of Thomas against Dr. Crawford.

A motion for directed verdict is a procedural device available in jury trials to promote judicial efficiency. La. C.C.P. art. 1810; *Gray v. State Farm Ins. Co.*, 53,554 (La. App. 2 Cir. 1/13/21), 310 So. 3d 768, *writ denied*, 21-00242 (La. 4/7/21), 313 So. 3d 978. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant, that reasonable jurors could not have arrived at a contrary conclusion. *Id*. *See also, Clifton v. Coleman,* 32,612 (La. App. 2 Cir. 12/23/99), 748 So. 2d 1263, *writ denied*, 00-0201 (La. 3/24/00), 758 So. 2d 151. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury. *Gray, supra.*

The trial judge is prohibited from making any credibility determination, but otherwise, he has much discretion in deciding a motion for directed verdict. *Barnes v. Thames*, 578 So. 2d 1155 (La. App. 1 Cir. 1991); *Vallery v. All American Life Ins. Co.*, 429 So. 2d 513 (La. App. 3 Cir. 1983). The standards are liberally construed in favor of the nonmoving party. *Gray, supra.*

9

The standard of review of a trial judge's granting of a directed verdict is whether, viewing the evidence submitted, reasonable men could not reach a contrary verdict. *Watson v. Willis-Knighton Med. Ctr.*, 47,295 (La. App. 2 Cir. 6/20/12), 93 So. 3d 855; *Dowles v. Conagra, Inc.*, 43,074 (La. App. 2 Cir. 3/26/08), 980 So. 2d 180. The appellate court must evaluate the propriety of a directed verdict in light of the substantive law related to the claims. *Id*. Appellate courts review the district court's granting of a directed verdict under the de novo standard of review. *Hall v. Folger Coffee Co.,* 03-1734, p.10 (La. 4/14/04), 874 So. 2d 90, 99.

In a medical malpractice case, the plaintiff bears the burden of proving a causal relationship between the injury and the accident which caused the injury. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So. 2d 757. The burden of proof is by a preponderance of the evidence. *Id*. The test for determining the causal relationship is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. *Id*.

After reviewing this record, we find that Dr. Crawford failed to prove that the facts and inferences so overwhelmingly favor a verdict in his favor, such that reasonable jurors could not have arrived at a contrary conclusion. During the trial, Dr. Guthikonda testified that a trauma to the neck can cause a vertebral artery dissection. The trial judge based his decision to grant a directed verdict by focusing on Dr. Guthikonda's testimony that the majority of chiropractic treatments do not result in any injury to a patient. However, the additional evidence presented by Thomas' other witnesses should also be considered by the factfinder. Thomas herself provided testimony that was

pertinent to the causation issue. Her testimony contradicted the version of events provided by Dr. Crawford, creating a genuine factual dispute that should be resolved by the jury. Additionally, Dr. Abshire provided medical testimony, admitting that if Thomas' version of events was to be believed, then Dr. Crawford's performance of the C-1 Toggle maneuver did in fact constitute a breach of the standard of care. Based on the record before us, it appears the trial court made credibility determinations that are reserved for the ultimate factfinder. Such credibility determinations are inappropriate when ruling on a motion for directed verdict.

After considering all evidentiary inferences in the light most favorable to Thomas, it is not clear from the record that the facts and inferences so overwhelmingly favor a verdict for Dr. Crawford that reasonable jurors could not have arrived at a contrary conclusion. We find that the evidence submitted by Thomas demonstrated that reasonable jurors could have concluded that Dr. Crawford's chiropractic treatment was the cause of her injuries. Accordingly, we reverse the trial court's judgment granting the motion for a directed verdict. Because the case should be submitted to the jury, we remand the case for further proceedings.

Our finding on Thomas' first assignment of error above pretermits consideration of her remaining assignment of error.

**CONCLUSION**

Considering the foregoing, the trial court's grant of directed verdict in favor of Steve Erin Crawford, D.C., is hereby reversed. The case is remanded for further proceedings. Costs of this appeal are assessed to Steve Erin Crawford, D.C..

**REVERSED; REMANDED.**