Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,554-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JOEY M. GRAY AND CAROLYN                    Plaintiffs-Appellants
GRAY

versus

STATE FARM INSURANCE                        Defendants-Appellees
COMPANY, PATRICK W.
JOHNSON, MURRAY R.
HARPER, AND STATE OF
LOUISIANA DEPARTMENT OF
TRANSPORTATION AND
DEVELOPMENT

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20084093

Honorable Alvin R. Sharp, Judge

* * * * *

WALTERS, PAPILLION, THOMAS,              Counsel for Appellants
CULLENS, LLC
By: Darrel J. Paplillion
    Renee C. Crasto

LAW OFFICES OF JIM NORRIS
By: Alan J. Norris

LOUISIANA DEPARTMENT OF JUSTICE          Counsel for Appellees
OFFICE OF ATTORNEY GENERAL
By: Wm. David Coffey
    C. Bryan Racer
    Phillip J. Ellis


\* \* \* \* \*


Before PITMAN, COX, and BLEICH (*Pro Tempore*), JJ.

**BLEICH, J. (*Pro Tempore*)**

The plaintiffs, Joey M. Gray and Carolyn Gray, appeal a district court judgment granting a directed verdict in favor of the defendant, the Louisiana Department of Transportation and Development ("DOTD"). For the following reasons, we reverse and remand this matter to the trial court for further proceedings.

## FACTS

This matter arises out of an automobile accident that occurred in Ouachita Parish on November 12, 2007. The defendant, Patrick Johnson ("Johnson"), was driving a black Chevrolet Tahoe southbound on Louisiana Highway 34, a two-lane road. Donna Lawrence, the driver of a red Pontiac, had activated her left turn signal and was waiting to execute a left turn into her driveway. Johnson, who testified that he was driving 55-60 miles per hour, did not notice Lawrence's vehicle until he was directly behind it. Johnson swerved onto the right shoulder to avoid colliding with Lawrence's vehicle. While swerving, Johnson saw a brick mailbox belonging to the defendants, Murray Harper, Edmond Harper, and Troy Harper ("the Harpers"). Johnson attempted to avoid hitting the mailbox by veering back onto the highway. However, the right rear panel of Johnson's SUV struck the mailbox, demolishing it. Thereafter, Johnson continued swerving to the left and entered the northbound lane. He struck a minivan driven by the plaintiff, Joey Gray ("Joey"); the plaintiff, Carolyn Gray ("Carolyn"), Joey's wife, was a passenger in the vehicle. After the collision, the plaintiffs' minivan rolled over, and Joey was ejected from the vehicle. Joey sustained

significant and extensive injuries. Carolyn also sustained serious physical injuries and emotional distress.[1]

At the center of this dispute is the mailbox the Harpers constructed in 1981. The mailbox was built with bricks and mortar and was placed on a concrete pad foundation. In 1985, the American Association of State Highway and Transportation Officials ("AASHTO") published a 37-page document entitled "A Guide for Erecting Mailboxes on Highways."[2] The guidelines referenced fatal accidents that occur in the United States due to vehicles striking mailboxes when the design and support of the mailbox contributed to the severity of the accident. The document stated, in pertinent part:

> The typical single mailbox installation is not a serious threat to motorists. [I]t is the massive structures, such as the masonry columns, railroad rails and ties, tractor wheels, plow blades, concrete filled barrels, etc., sometimes used to support mailboxes, that turn a single mailbox installation into a lethal roadside obstacle that should be eliminated.
>
> Recently mailboxes of heavy gauge steel or other **substantial** materials have been designed and sold as deterrents to vandalism. These massive boxes . . . are quite resistant to deformation. However, these boxes are potentially hazardous to occupants of errant vehicles regardless of the support used[.]

DOTD began implementing the AASHTO guidelines in 1987.

---

[1] Joey's injuries included a subarachnoid hemorrhage, skull fractures, multiple facial fractures, pelvic fractures, a fractured left arm, and a ruptured bladder. He was hospitalized approximately three months. Carolyn suffered multiple bruises and contusions and was treated for neck and back pain.

[2] AASHTO is not a government entity. Rather, it is a private entity that sets standards and publishes specifications and guidelines used in highway design and construction throughout the United States.

The plaintiffs filed a lawsuit against Johnson, his automobile insurer, State Farm Insurance Company, Murray Harper, and DOTD.[3] The plaintiffs alleged, *inter alia*: Johnson committed various acts of negligence, including failure to maintain control of his vehicle and failure to follow traffic ordinances; the Harpers constructed a mailbox that constituted an unreasonable risk of harm to motorists and failed to comply with standards, guidelines, rules, and specifications adopted by DOTD and AASHTO; and DOTD negligently allowed "the large, heavy, brick mailbox to be situated as constructed on the shoulder and right-of-way of Highway 34." The plaintiffs also asserted that DOTD had actual and constructive notice of the existence of the mailbox "through its inspectors and employees that periodically would inspect, repair, overlay, and who traveled Highway 34."[4]

The plaintiffs settled their claims with Johnson, the Harpers, and their respective insurers; those parties were dismissed from the lawsuit. The matter proceeded to trial with DOTD as the sole defendant. Prior to trial, the parties entered into a "Joint Stipulation of Facts," which provided as follows:

\*\*\*

21. The installation of the mailbox on LA Highway 34 at milepost 77.1 was brick on a concrete pad foundation. The installation was made in 1981.

22. The [AASHTO] guidelines for the placement of brick mailboxes on highway [sic]. DOTD should have been aware by 1985 that mailboxes such as this one were roadside hazards, and in 1986, DOTD began implementing AASHTO regulations for newly constructed mailboxes. In 1987, DOTD received

---

[3] The plaintiffs later amended the petition to add as defendants Edmond Harper and Troy Harper, and American Southern Insurance Company, the Harpers' homeowners' insurer.

[4] On June 20, 2017, Joey Gray died from injuries he sustained in an automobile accident unrelated to the accident at issue herein. His wife and children were substituted as plaintiffs in this matter.

notice that federal funds were available for removal of hazardous mailboxes, and therefore, DOTD could have begun removal at the time.

23. The Harper mailbox failed to meet standards, guidelines, rules and specifications adopted by the Louisiana DOTD and [AASHTO]. AASHTO is a standard-setting body which publishes specifications, test protocols and guidelines which were used in highway design and construction throughout the United States.

\*\*\*

The defendant, Patrick Johnson, did not testify during the trial.

However, his pretrial deposition was read to the jury in its entirety. Johnson

testified as follows:

\*\*\*

I was proceeding down the highway, and I realized that there was someone stopped in front of me. I really – I can't remember if it was – it seemed that – seemed that it was a fairly sudden stop, and that's fairly common on that highway because there is no – people just stop and sit and wait for traffic and turn. As soon as I realized that – that I could not stop or if I – I couldn't stop, I would've hit the vehicle, I put on my – applied my brakes and swerved to the right and missed that vehicle, came in contact with what seemed to be a ten-foot-tall brick mailbox, you know, in my mind; a very large brick mailbox. And then after that, it's all a blur.

\*\*\*

Johnson further testified as follows: he was traveling at a speed of approximately 55-60 mph in a 55 mph speed zone; he swerved to avoid rear-ending the turning vehicle; he believed he was in control of his vehicle before he encountered the mailbox; he hit the mailbox, which "sent [him] careening" back onto the roadway; hitting the mailbox caused him to lose control of his vehicle; and he did not recall the collision with the plaintiffs' vehicle.

During cross-examination, Johnson testified that he did not recall the specifics of the accident. Namely, he was unable to recollect the angle at which his vehicle left the roadway, which part of his vehicle struck the

4

mailbox, or whether he attempted to avoid steering away from the mailbox. Johnson stated that he "assumed" that he was applying his brakes during the sequence of events leading up to the accident. Johnson further testified that he had traveled Highway 34 for many years, and he was aware of the many residences located along the highway. However, he stated that he had never taken any particular notice of the mailboxes on the side of the road. According to Johnson, he did not notice the brick mailbox until he swerved to avoid hitting the turning vehicle. During redirect examination, Johnson testified that he believed that the presence of the brick mailbox, which he described as a "considerable structure," was a substantial factor in his vehicle entering the oncoming lane of traffic and colliding with the plaintiffs' vehicle.

Donna Lawrence, the driver of the red Pontiac (the left-turning vehicle), also testified during the trial. She stated as follows: she had activated her turn signal and was waiting for traffic to pass so she could execute a left turn from the highway into her driveway; she suddenly heard "squealing" tires; she looked into her rearview mirror and saw a "big black truck" approaching from behind her; the driver of the black truck went around her and hit her neighbors' brick mailbox; she saw bricks "flying all up in the air"; and she watched as the truck swerved onto her neighbors' property, reentered the roadway into oncoming traffic, and struck the plaintiffs' van.

Kevin Cummings, another eyewitness to the automobile accident, testified as follows: he was traveling behind the plaintiffs' minivan; he saw a car "stopped [i]n the southbound lane evidently trying to turn into a driveway and a black SUV was coming behind it"; he was accustomed to

5

seeing drivers maneuver onto the shoulder of Highway 34 to avoid waiting behind left-turning vehicles; the driver of the black SUV was "going to cream the car in front of him. So he hit the shoulder of the road to go around him . . . then hit a big brick mailbox"; after hitting the mailbox, the driver reentered the roadway "right across the lane of traffic and hit the van and flipped it"; he knew "something bad was going to happen when [Johnson] hit that mailbox [and] he just evidently lost it, lost control of it"; and Johnson crossed "the lane of traffic and hit [the] van" after he hit the mailbox.

During cross-examination, Cummings testified that he did not know how fast Johnson was driving, but he did not believe Johnson would have been able to stop in time to avoid hitting the red Pontiac. After Johnson struck the mailbox, it looked as if the mailbox "exploded" because "debris went everywhere."[5]

Troy Harper, one of the owners of the brick mailbox, testified. He testified he and his father constructed the brick mailbox in 1981. Harper stated that the mailbox remained next to the highway from the time of its construction until the day of the accident in question. Harper also stated that at the time the mailbox was constructed, he was unaware that he needed a permit from the State of Louisiana to construct a brick mailbox along the highway. He testified that DOTD did not inform him that the mailbox did not comply with standards and regulations. According to Harper, he would

---

[5] The deposition of Dr. Louie Crook, an emergency room physician, was read aloud in the presence of the jury. The video deposition of Dr. David Kim, an oral maxillofacial surgeon, was also played for the jury. Both physicians testified with regard to Joey's injuries and treatment.

have removed the structure had he known it did not comply because he "didn't want nothing that wasn't in compliance."

During cross-examination, Harper testified that he and his father used a preconstructed "three-inch thick" pad of concrete and erected the brick mailbox on top of it. He stated that he placed the mailbox approximately 18 inches from the shoulder of the roadway to give vehicles enough space to utilize the shoulder of the road without colliding with the mailbox. Harper testified that he would have obtained a permit and followed regulations if DOTD had informed him that he needed to do so.

Professor Andrew Jefferson McPhate, Sr. was accepted by the trial court as an "expert in mechanical engineering with particular expertise in vehicle dynamics and the effect of forces that interact with vehicles." Professor McPhate described the mailbox at issue as a hollow structure made from bricks and held together with mortar. He testified that the mailbox was located in a "clear zone," and Johnson did not have much time to react to its presence. Professor McPhate described a "clear zone" as an "area free of objects that would stop a vehicle if a driver runs into it." He stated that a motorist's actions would be affected if he or she leaves the roadway and perceives a hazard to navigation in a clear zone. Professor McPhate further testified:

> The reason that a clear zone is of concern, clear zone means that there [are] no objects that would actually stop a vehicle if you ran into it. And a vehicle is going to – I refer to it as real estate. If a vehicle gets an errant trajectory, is going somewhere where you don't want it to go for whatever reason, you will need some real estate in order to recover, to be able to gain control of your vehicle. And so whenever you have an errant trajectory, you would like to have some real estate that you can recover in and get the vehicle back under control. And you don't want objects in that clear zone to stop or suddenly stop your vehicle.

7

Professor McPhate stated that a clear zone is nonexistent if a "forty some odd inch brick mailbox" is located there.

During cross-examination, Professor McPhate testified that he was retained by plaintiffs' counsel to "evaluate the noticeability and conspicuity of the mailbox," and he did not reconstruct the automobile accident. He stated that the mailbox constituted a hazard because of its location and its potential impact on objects. According to Professor McPhate, hazards are quantifiable; therefore, the size of an object affects the degree of its hazard. He opined that the more substantial the object, the greater the hazard it presents. Professor McPhate also stated that he reviewed photographs from the accident, and photographs of the yaw markings on the highway left by Johnson's vehicle indicated that Johnson was veering to the left, and the path of the vehicle was not significantly changed after Johnson hit the mailbox.

During redirect examination, Professor McPhate testified that the paved shoulder of Highway 34 was approximately 10 feet-wide. He stated that the purpose of the paved shoulder of a highway is to provide motorists with a place to recover and reenter the travel portion of the highway. He stated, "The only thing that's a significant hazard is the stack of bricks that is the mailbox support system." Further, Professor McPhate testified that the evidence did not indicate that Johnson careened into the mailbox and was forced back onto the roadway. Professor McPhate reiterated that the yaw markings indicated that Johnson was already steering left when he encountered the mailbox. According to Professor McPhate, the most likely reason that Johnson was steering to the left was that he was attempting to

8

avoid hitting the mailbox.  Professor McPhate opined that the accident would not have occurred if the brick mailbox had not been in that location.

Following the plaintiffs' presentation of evidence, DOTD moved for a directed verdict pursuant to La. C.C.P. art. 1810.  DOTD argued the plaintiffs failed to meet their burden of proving causation.  Counsel for DOTD stated:

> Mr. McPhate even agrees that that mailbox that was struck did not change the trajectory, it wouldn't have mattered one way or the other in terms of the path that this vehicle took.  The second portion is he testified that no matter what the object is on the side of the road everybody is going to try and avoid it.  So it doesn't matter what it's made of, what it was constructed of, that was his testimony as well, what is the medium that's involved.  If you see something plastic, if you see something metal, you see something brick if you have control of your vehicle and if you have the ability you're going to turn away from it.  So, to the extent that the whole complaint here is that there is a – it's unreasonably dangerous to have a brick mailbox, not a mailbox, the medium is irrelevant.  The medium did not cause or contribute in any way to changing the trajectory or potentially causing Mr. Johnson to turn back.  He was going to turn back irrespective according to Professor McPhate's testimony.
>
> ***
>
> The second argument is the legal cause argument.  Where this works – looks at is you have to look at what is the nature of the rule that we alleged – that has been allegedly been violated.  In this case, the alleged rule that's been violated is allowing or permitting a brick mailbox that shouldn't have been there to be on the side of the road.  Now, what is the purpose of that rule?  The undisputed testimony is that the purpose of the rule is to prevent vehicle intrusion.  You don't want a brick coming through into the compartment of the vehicle and decapitating . . .. It's not to prevent trajectory, bounce off, et cetera.  Right. It's not to prevent drivers from steering away from it.  Right. Because that's going to happen anyway not matter what it's made of.  The sole purpose that you want non-brick mailboxes according to Mr. McPhate is to prevent vehicle intrusion. There's not vehicle intrusion here.
>
> ***

At the conclusion of the parties' arguments, the trial court granted the motion, stating that it "[found] merit to [DOTD's] motion[.]"

9

The plaintiffs appeal.

## DISCUSSION

The plaintiffs contend the trial court erred in granting DOTD's motion for directed verdict. The plaintiffs argue that they met their burden of proving that the presence of the mailbox was a cause-in-fact or legal cause of the accident.

A motion for directed verdict is a procedural device available in jury trials to promote judicial efficiency. *Fields v. Walpole Tire Serv., L.L.C.*, 45,206 (La. App. 2 Cir. 5/19/10), 37 So. 3d 549, 556, *writ denied sub nom. Fields v. Walpople Tire Servs., L.L.C.*, 10-1430 (La. 10/1/10), 45 So. 3d 1097; *Tanner v. Cooksey,* 42,010 (La. App. 2 Cir. 4/4/07, 954 So. 2d 335), *writ denied*, 07-0961 (La. 6/22/07), 959 So. 2d 508. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant, that reasonable jurors could not have arrived at a contrary conclusion. *Id.*; See also La. C.C.P. art. 1810 and *Clifton v. Coleman,* 32,612 (La. App. 2 Cir. 12/23/99), 748 So. 2d 1263, *writ denied*, 00-0201 (La. 3/24/00), 758 So. 2d 151. If there is substantial evidence opposed to the motion, *i.e.*, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury.

While credibility evaluations should not enter the process, the trial court has much discretion in deciding to grant or deny the motion. The

standard of review of a trial judge's granting of a directed verdict is whether, viewing the evidence submitted, reasonable men could not reach a contrary verdict. *Watson v. Willis-Knighton Med. Ctr.*, 47,295 (La. App. 2 Cir. 6/20/12), 93 So. 3d 855; *Dowles v. Conagra, Inc.*, 43,074 (La. App. 2 Cir. 3/26/08), 980 So. 2d 180. In addition, the appellate court must evaluate the propriety of a directed verdict in light of the substantive law related to the claims. *Id*.

In order for the DOTD to be found liable for negligence, the plaintiffs must prove that (1) DOTD had custody of the thing which caused plaintiffs' damages; (2) the thing was defective because it had a condition which created an unreasonable risk of harm; (3) DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time; and (4) the defect was a cause-in-fact of plaintiffs' injuries. *Boothe v. Dep't of Transportation & Dev. & Par. of E. Baton Rouge*, 18-1746 (La. 6/26/19), 285 So. 3d 451; *Cormier v. Comeaux*, 98-2378 (La. 7/7/99), 748 So.2d 1123.

In the instant case, the plaintiffs argue that they clearly established all four requirements in this case. Specifically, they contend the parties stipulated that (1) DOTD had custody of the roadway, (2) brick mailbox presented an unreasonable risk of harm, and (3) DOTD should have known of the dangerous condition caused by the brick mailbox. The plaintiffs also argue that the evidence presented at trial proved that the presence of the brick mailbox was a cause-in-fact and legal cause of the accident.

Contrarily, DOTD maintains that Professor McPhate testified that the AASHTO standards were designed solely to protect motorists from bricks intruding into vehicles whenever a brick mailbox was struck by a vehicle.

11

According to DOTD, the accident in this case was not the type of accident the guidelines were designed to protect against. Therefore, DOTD asserts that the brick mailbox was not a legal cause of the accident because no bricks intruded into Johnson's vehicle.

Cause in fact is generally a "but for" inquiry; if the plaintiff probably would have not sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact. *Roberts v. Benoit*, 605 So. 2d 1032 (La. 1991), *on reh'g* (5/28/1992). Stated differently, the inquiry is "[d]id the defendant contribute to the plaintiff's harm or is the defendant a cause of the plaintiff's harm?" *Id.*, at 1042. An alternative method for determining cause in fact, which is generally used when multiple causes are present, is the "substantial factor" test. *Roberts*, *supra*. Under this test, cause in fact is found to exist when the defendant's conduct was a "substantial factor" in bringing about plaintiff's harm. *Id.*

Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. *Rando v. Anco Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So. 3d 1065; *Roberts*, *supra*. The scope of protection inquiry asks whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner. *Rando*, *supra*; *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289 (La. 1993).

In *Rogers v. Daigle*, 93-1523 (La. App. 1 Cir. 6/3/94), 643 So. 2d 758, *on reh'g* (10/27/94), the plaintiffs' son was killed when the vehicle in which he was riding as a passenger struck a large brick mailbox. The plaintiffs filed a lawsuit alleging, *inter alia*, the mailbox failed to comply with

AASHTO guidelines, and the owners of the mailbox and DOTD were negligent in failing to remove it. The trial court found that the driver of the vehicle was solely at fault and dismissed the plaintiff's claims against the remaining defendants. The court of appeal reversed, finding that the trial court erred in failing to assess fault to the owners of the mailbox and DOTD. The Court stated, in pertinent part:

> Although the driver was impaired and was speeding, the mailbox was a substantial cause of the plaintiffs' son's death. Because of the AASHTO guidelines, DOTD was aware or should have been aware as early as 1985 that mailboxes such as this one were lethal roadside hazards; in fact, in 1986, it began implementing AASHTO regulations regarding mailboxes in new construction. The letter DOTD received in 1987 shows that federal funds were available for removal of such hazardous mailboxes, and therefore, DOTD should have begun removal of them at the time. However, DOTD overlaid Highway 316 in 1990 and 1991 without having the mailbox removed. We conclude that DOTD's failure to remove the mailbox while overlaying the highway in question, armed with knowledge of the hazardous nature of the mailbox, was a breach of a duty DOTD owed to the driving public to maintain a reasonably safe roadway and shoulder. DOTD enjoys no immunity from liability for its operational decision not to remove the mailbox.

*Id.*, at 762 (Internal citations omitted).

After reviewing this record, we find that DOTD failed to prove that the facts and inferences so overwhelmingly favor a verdict in its favor, that reasonable jurors could not have arrived at a contrary conclusion. During the trial, Johnson testified that he swerved to his right to avoid colliding with the left-turning vehicle. At that point, he noticed the large brick mailbox, and he immediately reacted by swerving to the left to attempt to avoid striking it. Johnson unequivocally testified that he believed the presence of the mailbox was a substantial factor in causing his vehicle to enter the plaintiff's lane of travel.

Professor McPhate testified that any roadside object can be a hazard because it has the potential to be struck by a vehicle and drivers will attempt to avoid hitting it. He also stated that the larger and more substantial an object is, the more of a hazard it becomes. With regard to the brick mailbox, Professor McPhate opined that it was a navigational hazard because drivers would "take action" to avoid hitting it. Further, Professor McPhate provided his uncontroverted opinion that the accident would not have occurred had the brick mailbox not been in that location.

As DOTD points out, Professor McPhate testified that the yaw marks on the pavement indicated that striking the mailbox did not change trajectory of Johnson's vehicle. However, it appears that the vehicle's trajectory was not altered because when Johnson noticed the presence of the mailbox, he began veering to the left to avoid striking it.

Further, we are unpersuaded by DOTD's contention that the sole purpose of the AASHTO regulations with regard to brick mailboxes was to prevent bricks from intruding into vehicles. Our reading of the AASHTO standards convinces us that the standards/guidelines/regulations were implemented in an attempt to curtail fatal accidents caused by "massive structures" on the side of the state and federal highways.

We find that the plaintiffs presented evidence of such quality and weight that reasonable and fair-minded jurors, in the exercise of impartial judgment, might reach different conclusions. The evidence submitted by the plaintiffs demonstrated that reasonable jurors could have concluded that DOTD's failure to remove the mailbox (or failure to notify the owners that the mailbox did not comply with AASHTO guidelines) was a cause of the

14

accident.  Consequently, the motion for a directed verdict should be denied and the case submitted to the jury.

## CONCLUSION

Based on the foregoing reasons, the trial court's grant of directed verdict in favor of the defendant, DOTD, is hereby reversed.  The case is remanded for further proceedings.  Costs of the appeal, in the amount of $6,618.50, are assessed to the State of Louisiana, Department of Transportation and Development, in accordance with La. R.S. 13:4521.

**REVERSED; REMANDED.**